147 So.2d 435 (1962)
E. M. WATKINS et al., Plaintiffs-Appellants,
v.
Viola ZEIGLER et al., Defendants-Appellees.
No. 9813.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1962.
Holloway & Baker, Jonesboro, for appellants.
*436 Davenport, Farr & Kelly, Monroe, for appellees.
Before HARDY, GLADNEY and AYRES, JJ.
AYRES, Judge.
This is a petitory action wherein the plaintiffs seek to be decreed the owners of a certain-described 75-acre tract of land, or, in the alternative, of an undivided 7/10 interest therein. In the event of a judgment in accordance with their alternative claim, plaintiffs pray that the property be partitioned by licitation.
Plaintiffs are E. M. Watkins; Mrs. Claribel Frasier McClendon, widow of B. B. McClendon, Sr.; John Ricky McClendon, and Margaret Ann McClendon Coenen, minor children and heirs of B. B. McClendon, Sr., deceased, represented herein by their legal representatives. The defendants are such of the heirs of Carter Zeigler and Katie Zeigler, now deceased, who have not disposed of their inheritance in the estate of the decedents. The property herein involved was acquired by Carter Zeigler as a portion of the assets of the community of acquets and gains formerly existing between him and his wife.
All parties agree that the ancestors-in-title of both plaintiffs and defendants are Carter Zeigler and Katie Zeigler, of whose marriage five children were born and survived, namely: Augusta Zeigler Sowells, wife of Asberry Sowells; Elvie Retter Zeigler Robinson, wife of Johnson S. Robinson; Jake Zeigler; Mary Zeigler Taylor, wife of Richard Taylor; and Edmond Zeigler; all of whom are now dead. Prior to her death, Augusta Zeigler Sowells sold her undivided interest in this property, and neither she nor her heirs have made any claim to an interest in this property in this litigation.
Defendants are all the children and grandchildren of the other four children of Carter Zeigler and Katie Zeigler who have not executed acts of conveyance to E. M. Watkins and B. B. McClendon, Sr. Their claims to their undivided interests in the tract of land is by inheritance. The heirship and lines of descendency from Carter Zeigler and Katie Zeigler have been stipulated by the parties.
Plaintiffs claim ownership of the whole of this property through a conveyance from Joe Anders, Lee Guster, and Willis Dunaway, whose wives were Sarah Robinson, Elmer Robinson, and Cora Robinson, respectively, daughters of Elvie Retter Zeigler Robinson. Specifically, plaintiffs claim acquisition through acts of purchase of the property by E. M. Watkins and B. B. McClendon, Sr., from Sarah Robinson Anders, widow of Joe Anders; from Cora Robinson Dunaway, the widow, and from the surviving children of Willis Dunaway; from the children of Lee Guster and Elmer Robinson Guster; and from Alice Jackson, a prior purchaser of an undivided interest in the tract.
Through possession under a quitclaim deed from the Bank of Choudrant to Joe Anders, Lee Guster, and Willis Dunaway, plaintiffs also claim title by the acquisitive prescriptions of 10 and 30 years. Title in the Bank of Choudrant was based upon a sheriff's deed from its debtor, B. F. Huey; and the title of Huey, in turn, was based upon a deed purportedly executed to him by Augusta Sowells, Everetta Scott, William Zeigler, Frank Taylor, Judge Taylor, Lula Elmore, and Lige Taylor, wherein they denominated themselves as the "sole and only heirs of Katie Zeigler, deceased."
The instruments upon which plaintiffs claim title to the aforesaid property, in chronological order, are: (1) a deed dated December 18, 1919, whereby Augusta Zeigler Sowells, Everetta Scott, Lige Taylor, Frank Taylor, Lula Elmore, Judge Taylor, and William Zeigler as aforesaid, represented themselves as all the heirs of Katie Zeigler, deceased, and purportedly sold the property herein concerned, together with an additional 25 acres not herein involved, to B. F. Huey for $1,000 cash (Defendants *437 dispute this deed and claim that it is a forgery, and is of no force or effect); (2) a deed of Guster Sowells and Elvie Retter Zeigler to Johnson Robinson by which these parties purport to transfer a 1/5 and a 1/10 interest, respectively, in the subject property (This instrument was dated April 5, 1920, but was not recorded until May 11, 1926); (3) a sheriff's deed, by which, under date of June 10, 1922, the property herein involved was purportedly sold to the Bank of Choudrant, its having been previously mortgaged by B. F. Huey to the bank to secure an indebtedness; (4) by deed dated June 12, 1926, and recorded June 18, 1926, the Bank of Choudrant quitclaimed the property to Joe Anders, Lee Guster, and Willis Dunaway; (5) deeds from Joe Anders, Lee Guster, and Willis Dunaway, or their heirs, dated December 5, 1958, and December 10, 1958, respectively.
That the deed to B. F. Huey was not executed by all the heirs of Katie Zeigler is apparent from the stipulation of the heirship of Carter Zeigler and Katie Zeigler. Nor could such instrument affect or convey the interest of the heirs not made parties thereto. Thus, it is also apparent that, unless the claim of 10 years' possession in good faith or 30 years' possession supports plaintiffs' pleas of prescription, their ownership must be limited to their vendors' interest as acquired by them through inheritance.
After trial, the court concluded that the deed from Augusta Zeigler Sowells et al. to B. F. Huey was a valid conveyance and, through the recited chain of title, plaintiffs acquired full ownership of the interests of those parties who had allegedly executed that deed. The court found, however, their adverse possession insufficient to support the pleas of either 10 or 30 years' acquisitive prescription, and accordingly held that all the heirs of Carter Zeigler and Katie Zeigler, not having executed acts of conveyance to plaintiffs or their ancestors-in-title, were entitled to recognition as owners of their respective undivided interests in the property concerned.
Judgment was rendered in accordance with the aforesaid conclusions, decreeing plaintiffs the owners of an undivided 91/150 interest and certain of the defendants as owners of the remainder of the property. From this judgment, plaintiffs appealed, praying that the judgment be amended so as to recognize their full ownership. Their claims to title to this property, based on 10 years' good faith and 30 years' acquisitive prescription, have also been reasserted. Defendants have answered the appeal and assigned error in the court's refusal to consider evidence relative to the alleged forgery of the deed to B. F. Huey dated December 18, 1919, or to find and hold that such deed was in fact a forgery.
Plaintiff's first assignment of error relates to the court's conclusion and holding that the ancient document statute, LSA-R.S. 13:3728 et seq., as well as the provisions of the statute pertaining to written documents of record for a period of time exceeding 22 years, precluded defendants from attacking the validity of the deed to B. F. Huey on the ground that it was a forgery. The statutes constitute rules of evidence. They are found in Chapter 17 of Title 13 of the LSA-Revised Statutes, entitled "Witnesses and Evidence," and sustain solely to the admissibility of document in evidence. The initial section of the ancient document statute specifies that
"On the trial of any civil case in any court ancient documents, defined in R.S. 13:3729, shall be received in evidence."
The presumption of the execution and of the genuineness of documents which have been of record for a period of 22 years, or more, under the first of the statutes, or for a period of 30 years, or more, under the latter, is, nevertheless, only a prima-facie presumption of such facts. LSA-R.S. 13:3727 and 3730. Thus, it is unnecessary to establish the execution or the genuineness of such documents prerequisite to their introduction as evidence.
*438 The statutes, however, do not indicate that the presumption is conclusive and not rebuttable by appropriate proof. The indication is clearly to the contrary. By the very terms of the statutes, the presumption as to the genuineness of a document is prima facie only, which obviously means that, in the absence of proof to the contrary, the instrument will be accepted as valid. Therefore, where the proof establishes the invalidity of such a document, the primafacie presumption of its execution and validity is rebutted.
As defined in Black's Law Dictionary, the term "prima facie" means
"At first sight; on the first appearance; * * * presumably; a fact presumed to be true unless disproved by some evidence to the contrary." (Emphasis supplied.)
The burden of proof would appear, from the language of the statutes, to be upon those who assail an ancient document to overcome the presumption of its prima-facie validity. What are the facts in this respect as disclosed by the evidence? Beulah Fleming, aged 65 years at the time of trial, testified that her maiden name was Bertha Beulah Taylor; that, at one time, she was married to Henry Elmore, and that she had never been known or referred to as Lula Elmore. On being presented with the original of the deed to B. F. Huey, this witness denied that she signed the deed and testified that the signature, "Lula Elmore," appearing thereon, was not hers. Judge Taylor, aged 60 years at the time of trial, testified that he did not sign a deed to B. F. Huey and that his purported signature on the deed was not actually his. It was stipulated that Lige Taylor, who resided in California, would, if he were present in court, testify that he did not sign the deed to Huey. William Zeigler and Frank Taylor were dead at the time of this trial.
Beulah Taylor and Judge Taylor were presented with a document bearing their signatures, made at the request of the district attorney in 1922 when Huey was on trial for the forgery of this very deed. This document also contains the signature of William Zeigler, placed thereon at the same time. By reference to the signatures on the deed and to the signatures on the exhibit, made at the request of the district attorney, and a comparison of such signatures, irregularities and inconsistencies are disclosed which warrant and justify a conclusion that William Zeigler's signature on the deed is not genuine: (1) the character of the handwriting would so indicate; and (2) the name Zeigler is not correctly spelled on the deedthe letter "1" is omitted therefrom.
To contradict the aforesaid testimony, plaintiffs offered no writings for comparison or verification. I. F. Bennett, however, testified as to the genuineness of his own signature appearing on the deed as a subscribing witness. He was able to identify his own signature and the notation following: "Witnesses to Augusta Sowell and Everetta Scott." He had no independent recollection of the transaction or of having seen these parties sign the deed. Therefore, the testimony of Beulah Fleming and Judge Taylor, and the stipulation as to the testimony of Lige Taylor, is without contradiction.
Other facts and circumstances support the testimony that the deed is a forgery. The deed to Huey, although purporting to convey 100 acres inclusive of the tract herein involved, recites a cash consideration of $1,000. At an execution sale two-and-a-half years thereafter, the Bank of Choudrant bid $650 for the property. A suit was filed by certain of the heirs of Carter Zeigler and Katie Zeigler on May 11, 1926, against the Bank of Choudrant attacking the bank's title to the property on the ground that the deed to Huey, its vendor, was a forgery. Thereafter, on June 12, 1926, the bank executed a quitclaim deed, as aforesaid, to Joe Anders, Lee Guster, and Willis Dunaway for a recited consideration of $135; whereupon, on June 17, 1926, the suit against the bank was dismissed.
*439 The record further discloses that B. F. Huey was summoned as a witness by plaintiffs in the instant case, but was released without testifying. It must be presumed, had he testified, his testimony would not have been favorable to plaintiffs. The aforesaid uncontradicted testimony and the aforesaid facts and circumstances establish, to our minds, that the deed of December 18, 1919, to B. F. Huey was a forgery and, as such, had no legal force and effect. The prima-facie presumption of the execution and validity of the deed to Huey has, in our opinion, been successfully overcome and rebutted. Plaintiffs thereafter submitted no proof to substantiate the deed.
Plaintiffs further contend, however, that, notwithstanding the invalidity of the deed to Huey and the nature of the deed from the bank as a quitclaim, they acquired title to the whole of the property by virtue of 10 years' acquisitive prescription under LSA-C.C. Art. 3478 which provides that
"He who acquires an immovable in good faith and by just title prescribes for it in ten years. * * *"
In order to prescribe under this specie of prescription, a just title is required. LSA-C.C. Art. 3483. The term "just title" means a title which the possessor received from a person whom he honestly believed to be the real owner. LSA-C.C. Art. 3484.
Additional requirements necessary for one to plead the prescription of 10 years is that the possession, in fact, be as owner, and continuous, uninterrupted, peaceable, public, and unequivocal, provided that civil possession shall suffice where preceded by corporeal possession. LSA-C.C. Art. 3487. A possessor in good faith is one who has just reason to believe himself the master of the thing which he possesses. LSA-C.C. Art. 3451. And the possessor in bad faith is he who has assumed the quality of master, well knowing that he has no title to the property or that his title is defective. LSA-C.C. Art. 3452.
What are the facts from which it may be determined the good or bad faith of Joe Anders, Lee Guster, and Willis Dunaway in acquiring or possessing, if they did possess, the property?
In 1919, B. F. Huey placed of record a deed allegedly from seven of the Zeigler heirs to himself and soon thereafter mortgaged the property to the Bank of Choudrant. By virtue of a writ issued at the instance of the bank in a suit against Huey, the property was sold to the bank in a sheriff's sale of June 10, 1922. There is no showing that either Huey or the bank ever exercised any acts of possession. The wives of the vendees of the bank were heirs to this property. From their family relationship these vendees knew that those named as vendors in Huey's deed were not all the heirs to the property.
Moreover, in 1922, Huey was indicted for forgery of that very deed. Augusta Sowells, Judge Taylor, Beulah Elmore, William Zeigler, Gordon Zeigler, and E. R. Guyton were twice summoned to appear before a grand jury investigating said forgery. In addition, on May 11, 1926, only a month before the alleged purchase from the Bank of Choudrant, the suit by a portion of the heirs of Carter Zeigler and Katie Zeigler, attacking the deed as a forgery, was filed. The identical parties, who, plaintiffs now say, were in good faith in purchasing this property from the bank, alleged, only a short time before, in joining their wives as parties-plaintiffs, the invalidity of the title to the bank. Thus, these parties not only had actual knowledge of the bank's defective title but, from the marriages of these parties into the Zeigler family, it may be assumed they knew the family relationship and knew that those purporting to sell to Huey were not the sole and only heirs of Carter Zeigler and Katie Zeigler. From their knowledge of the family relationship, as well as from their knowledge of the forgery, the purchase made by these parties was one in bad faith. Ruth v. Buwe, 185 La. 204, 168 So. 776; Laroux v. Myers, La.App. 2d Cir., *440 1932, 144 So. 117; Roberson v. Reed, La. App. 2d Cir., 1939, 190 So. 153; Dinwiddie v. Cox, La.App. 2d Cir., 1942, 9 So.2d 68 (writs denied); LaFleur v. Fontenot, La. App. 1st Cir., 1957, 93 So.2d 285; Holley v. Lockett, La.App. 2d Cir., 1961, 126 So.2d 814; LSA-C.C. Art. 1846(3); 34 T.L.R. 670.
The plea of 10 years' acquisitive prescription is, therefore, without merit and was properly overruled.
With reference to the plea of 30 years' prescription, it may be pointed out that whatever possession of the property was had by Joe Anders, Lee Guster, and Willis Dunaway, under their purported purchase from the bank, such possession was, at most, as co-owners with a vast number of others. The rule, as stated in Lee v. Jones, 224 La. 231, 69 So.2d 26, 28, is that the possession of a coheir holding property in indivision with his brothers and sisters is to be viewed as precarious; that the possession of a co-owner, or of an heir, holding property in indivision is to be viewed as precariousnot as owner of the whole but for the benefit of his co-owners; and, in order for one co-owner or coheir to prescribe against the others, his possession must be clearly hostile to the rights of the others. In that case, the court pointed out that, as a general rule, owners in indivision cannot acquire title by prescription against each other, citing: Litton v. Litton, 36 La.Ann. 348; Simon v. Richard, 42 La.Ann. 842, 8 So. 629; Dew v. Hammett, 150 La. 1094, 91 So. 523; Hill v. Dees, 188 La. 708, 178 So. 250; Arnold v. Sun Oil Company, 218 La. 50, 48 So.2d 369; and stated:
"* * * In order for one coowner or coheir to prescribe against the other, his possession must be clearly hostile to the rights of the other and, in such instances, it is necessary, in order to commence the running of prescription, that notice be given by the former to the latter of his intention to hold, animo domini, all of the common property. Ethredge v. Watts, 137 La. 686, 69 So. 95; Liles v. Pitts, 145 La. 650, 82 So. 735; Gill v. Robinson, 11 Orleans App. 226 and Arnold v. Sun Oil Company, supra. Occupancy, use, payment of taxes and the like will not suffice."
Moreover, the record does not establish that plaintiffs' ancestors-in-title had such possession of the property as entitled them to prescribe for the ownership thereof. The testimony is vague and indefinite as to acts of actual possession. While a house was once located on this property, it had not been so for 25 years. Whatever acreage had been farmed by Carter Zeigler and Katie Zeigler had grown up in woods from which only some infrequent and spasmodic cutting had been carried on. The property in dispute is rolling hill land. There were no external signs of possession to indicate that plaintiffs' ancestors held control and dominion over the property. The occasional cutting of timber did not constitute possession sufficiently adverse to support a plea of prescription acquirendi causa. Jacobs v. Southern Advance Bag & Paper Company, 228 La. 462, 82 So.2d 765, 768, and the authorities therein cited.
For the aforesaid reasons, we conclude that the plea of 30 years' acquisitive prescription, as was the plea of 10 years' prescription, was without merit and was properly overruled; that the deed from Augusta Sowells et al. to B. F. Huey dated December 18, 1919, was invalid and ineffective, null and void; and, accordingly, that the ownership of the property herein involved is in the heirs of Carter Zeigler and Katie Zeigler, except such interest as was conveyed to E. M. Watkins and B. B. McClendon otherwise than by the conveyance predicated on the B. F. Huey deed.
From the stipulation as to the heirship, the interest of the several parties may be calculated and determined. No good purpose can be served through a detailed calculation in this opinion. The identification *441 and enumeration of the parties and their respective interests in the judgment will suffice.
Therefore, the judgment appealed is amended and recast so as to read as follows:
It is therefore Ordered, Adjudged, and Decreed there be judgment herein in favor of the plaintiffs and against the defendants recognizing and decreeing, in the proportions set forth opposite their names, that the following,

 E. M. Watkins 2/15
 Claribel Frasier McClendon 1/15
 John Ricky McClendon 1/30
 Margaret Ann McClendon 1/30
 Ozie Lee Morgan 1/30
 Johnny B. Zeigler 1/30
 Freddie Mae Hewitt 1/280
 Richard Franklin Taylor, Jr. 1/280
 Betty Jean Williams 1/280
 Billie Jo Taylor 1/280
 Bobbie Donell Taylor 1/280
 Julia Taylor 1/280
 Mary Lee Van Buren 1/280
 Judge Taylor 1/40
 Beulah Elmore 1/40
 Lige Taylor 1/40
 Richard Robinson 1/15
 D. L. Robinson 1/30
 Jim Robinson 1/30
 Handy Zeigler 1/15
 Janie Zeigler Cooper 1/15
 Nonie Wright 1/25
 Robert Zeigler 1/25
 Charles Zeigler 1/25
 Viola Zeigler 1/25
 Willie Ann Morgan 1/25
 Fannie Taylor Kalp 1/40
 Anna Taylor Burks 1/40
 Arie Taylor Williams 1/40
 Emma Taylor 1/40,

are the owners of the following-described property, to-wit:
SW ¼ of SW ¼ and east 15 acres of NW ¼ of SW ¼, and the diagonal SW ½ of the SE ¼ of NW ¼, Sec. 15, T. 17 N., R. 1 W., Louisiana meridian, Jackson Parish, Louisiana, containing 75 acres, more or less.
It is further Ordered, Adjudged, and Decreed that the aforesaid property be partitioned by licitation in accordance with law, and that, accordingly, the proceeds of a sale thereof be deposited with Carey M. Staples, Clerk of Court and Ex-officio Notary Public in and for Jackson Parish, Louisiana, to whom the parties hereto are referred, and who shall, after the payment of all costs, disburse the funds so received among plaintiffs and defendants in accordance with their respective interests as decreed and set forth herein above; and
It is further Ordered, Adjudged, and Decreed that the costs of court, including the cost of this appeal, be, and the same are, assessed against the plaintiffs-appellants, and that the cost of the partition be taxed against the mass and ordered paid from the proceeds to be realized from the sale of the aforesaid property prior to the distribution of such funds.
Amended and affirmed.