LOTTINGER, Judge.
This is a suit by Bernard Caillier, doing business as Caillier’s Radio and T.V. Service, as petitioner against the Texas and Pacific Railway Company, as defendant, for damages to certain electronic equipment shipped by petitioner via the defend- and railway company. Judgment was rendered in favor of petitioner against defendant in the sum of $21,006.00 with legal interest from December 14, 1967 and for all costs. The defendant has taken a sus-pensive appeal.
The evidence reflects that the petitioner was the owner and operator of a radio and television repair shop in Donaldsonville, Louisiana. He decided to purchase some television picture tube rebuilding equipment and found a factory in Massachusetts which was going out of business. He negotiated a sale of the factory’s equipment to himself for the sum of $4,500.00.
The petitioner went up to Massachusetts, had the equipment packaged and shipped some of the equipment to Donaldsonville by via The New York, New Haven and Hartford Railroad Company, through several other intermediate carriers and finally Texas and Pacific Railway Company, the defendant herein. Upon the arrival of the equipment in Donaldsonville Caillier found that some of the equipment was damaged. The petitioner alleges that he requested the defendant, to examine the damaged equipment and to negotiate with him for his loss, however, they refused to do so. Accordingly, petitioner filed this suit wherein he claims damages of the sum of $29,734.45, the alleged replacement value of the equipment.
The jurisprudence is well established to the fact that in order to recover damages from a carrier, the consignee must prove the following:
(1) Receipt of goods by initial carrier in good condition;
(2) Arrival in damaged condition; and
(3) The amount of the loss.
Frischhertz Electric Company v. Strickland Transp. Co., 262 La. 791, 264 So.2d 646.
The testimony of the petitioner is that he personally went to Boston and had the equipment packaged by a professional packaging company and that the equipment was in good condition when delivered to the carrier. There is filed of record a uniform straight Bill of Lading issued by the original carrier, The New York, New Haven and Hartford Railroad Company which contains no notation of damages or exceptions made by the receiving carrier. According to 14 Am.Jur.2d Carriers 619, page 133, it is generally held that the issuance of a Bill of Lading or shipping receipt wherein there is no notation of a visible damages or defects in the shipment creates a presumption that, insofar as is disclosed by ordinary inspection, the shipment was free from visible defects or damages and, to such extent, in good condition when received by the carrier. Such fact has been held to constitute prima facie evidence that the goods were received in good condition.
Mr. Joseph Theodore Molaison who testified on behalf of defendant stated that upon arrival of the shipment he was notified by Mr. Caillier that the shipment was damaged. Mr. Molaison inspected the car and saw that some of the shipment was damaged and, upon instruction of his superiors, he notified Mr. Caillier to remove the undamaged equipment and leave the damaged equipment in the car. He claims that he also asked Mr. Caillier to hand him a list of the damaged equipment which, he claims, Mr. Caillier never furnished him. After some three weeks in which most of the equipment was still in the car, the railroad company removed the car.
*873 Mr. Molaison testified that it could have been up to three days after the arrival of the car before Mr. Caillier had been notified and first came to inspect the car. During the three week interval which he mentioned above the car could have been removed from its prior location and it could have been moved as far as Addis which is some distance from Donaldson-ville.
With regard to the condition of the merchandise when Mr. Molaison first inspected it he testified:
“Well, it was damaged, a good portion of it. The braces were broken and it was broken, it was damaged, the merchandise.”
Mr. Molaison couldn’t make an estimate as to what percentage of the merchandise was damaged as it was all electronic equipment with which he was not familiar. He later testified that it could have been a week after the car arrived when he first notified Mr. Caillier to remove the undamaged equipment.
The petitioner testified that he had removed certain pieces of the damaged equipment from the wreckage and discovered the extent of the damages. He testified that the removed equipment was of no use to him at all and that to have same repaired would involve shipping same to a factory and having it repaired and having it shipped back. The cost would almost be prohibited and it would be cheaper, and more timesaving, to purchase new or rebuilt units. Salvage value of the shipment, as testified, by him, would have been about nil.
Although he made demands upon the local railway agents for them to provide some inspector or appraiser, none came. He testified that the equipment was damaged to such an extent that it would be useless to even attempt to salvage any of it.
The deposition of Mr. William Avila, Treasurer of Solar Electronics, Inc., from which the equipment was purchased as well as by the testimony of Mr. Caillier shows that the equipment when purchased by Mr. Caillier was in excellent condition.
Mr. William T. Freeland, who had a picture tube rebuilding plant in New Orleans, agreed with the testimony of Mr. Caillier to the effect that the equipment involved is of such a nature that there is little wear or tear on same. The sales made by Mr. Freeland were for his own use and were isolated sales, and the equipment purchased by him had to be repaired or rebuilt. He testified that in several instances he had rebuilt the equipment himself, being an electrical engineer. In a breakdown of costs by Mr. Freeland, for him to rebuild an eight station oven, the cost figure came to $4,300.00. With a 25 profit margin attached, the price would come to over $5,300.00. This is very comparable to the price quoted by Mr. Caillier for a factory rebuilt 8 station oven, which price was quoted at $5,990.00. Considering the evidence we feel that the quantum allowed by the lower court was fair.
There is no question in our minds that damages were suffered by the petitioner which were not as a result of his own fault. We find no error in the decision of the lower court and said decision will be affirmed.
For the reasons hereinabove assigned, the judgment of the lower court is affirmed, all costs to be paid by defendant.
Affirmed.