343 So.2d 319 (1977)
HOME FURNITURE AND APPLIANCE, Plaintiff-Appellee,
v.
RED BALL MOTOR FREIGHT, INC., Defendant-Appellant.
No. 13144.
Court of Appeal of Louisiana, Second Circuit.
February 14, 1977.
Rehearing Denied March 21, 1977.[*]
Writ Refused May 26, 1977.
*320 Hudson, Potts & Bernstein by W. Craig Henry, Monroe, for Red Ball Motor Freight, Inc.
Baker, Culpepper & Brunson by Herman A. Castete, Jonesboro, for Home Furniture & Appliance.
Before BOLIN, HALL and MARVIN, JJ.
Rehearing En Banc. Rehearing Denied March 21, 1977.
MARVIN, Judge.
The defendant carrier appeals from a judgment in favor of the plaintiff consignee for $196 as damages to a refrigerator delivered in the crate by the carrier. We affirm.
The refrigerator was crated and shipped by an out-of-state manufacturer on one or more carriers other than defendant to a distributor in Shreveport where defendant received it. From Shreveport, the refrigerator was transported by defendant to Monroe and then to plaintiff in Jonesboro. The Bill of Lading, signed by the carrier in Shreveport, and the Freight Bill, signed by the consignee in Jonesboro, provide that the property was received by each in apparent good order, condition of contents unknown, with no exceptions being written in the space provided therefor. In commercial jargon, this is referred to as a "clean" bill of lading.
The carrier's driver assisted the consignee in unloading the crate from the truck in Jonesboro. The crate showed no apparent signs of damage. When the refrigerator was uncrated the next day it was found to be damaged. A close inspection then revealed some minor damage to the crate. When the carrier rejected the consignee's claim for the damage, this litigation was instituted.
C.C. Art. 2754 provides:

*321 "Carriers . . . are liable for . . damage of the things intrusted to their care, unless they can prove that such. . . damage has been occasioned by accidental and uncontrollable events." (Emphasis supplied).
In any case against a carrier for damage to goods, the claimant (whether shipper or consignee) must prove (1) receipt by the carrier in good condition; (2) arrival in a damaged condition; and (3) the amount of the loss. Frischhertz Electric Co. v. Strickland Transportation Co., 262 La. 791, 264 So.2d 646 (1972).
The trial court found all three requirements to have been satisfied, but that the only proof of requirement one was the clean bill of lading signed by the carrier in Shreveport.
In Frischhertz, supra, our Supreme Court stated that the execution of a clean bill of lading ". . . has been generally held to constitute prima facie evidence that the goods were received [by the carrier] in good condition, at least with respect to external matters." We recognized the prima facie effect of a clean bill of lading in Rabon v. Red Ball Motor Freight, Inc., 292 So.2d 332 (La.App. 2d Cir. 1974).
The carrier contends prima facie effect of a clean bill does not apply to the goods unless the crate has visible damage upon delivery. The carrier argues that where there is no visible damage to the crate upon delivery, the prima facie effect of the clean bill establishes only the presumption that the crate (and not the goods) was in good condition when the bill was executed by the carrier.
The uniform bill of lading in this case describes the pertinent property received thereunder, not only as one or more packages or crates, but in this manner:
"No.
Pkgs. Description . . .
4 Freezers, Refrigerators
 HHD Item #53100."
In our opinion, this bill is not limited to the packages, but is to be interpreted to mean packages of refrigerators, as it says. The prima facie effect of the bill is not only that the crates or packages were received in apparent good order, but that the packages of refrigerators were received in apparent good order. The presumption applies to the goods within the packages or crates, and in our opinion, the presumption should be applied against the carrier whether or not the crate has visible damage upon delivery.
The general rule is best explained and stated in the annotation, "Conclusiveness of receipt clauses in bill of lading," 67 A.L. R.2d 1023. From our review of many of the cases cited therein, we restate the rule in this way:
A recital in a bill of lading that goods (and particularly crated goods) received in apparent good order, in the absence of special provisions, is prima facie but not conclusive evidence of the apparent condition of the goods received, and the carrier (with or without additional notations in the bill of want of knowledge and unless otherwise precluded by special estoppel, contract or statute) may show either that (1) the damage subsequently found resulted from a cause not apparent at the time the carrier received the goods, or (2) the truth on the issue of condition of the goods at the time of receipt in support of any proper defense. Similarly, any party is not prevented from showing the true condition of the goods at the time of receipt, notwithstanding the clean bill, if the condition of the goods is an issue in support of a cause of action or of a defense.
Application of the rule as we have stated it does not impose an impossible burden on either the consignee or the terminal carrier. The carrier is not precluded from showing, as the rule states, ". . . that the damage subsequently found resulted from a cause not apparent at the time the carrier received the goods." The carrier may establish this to overcome the prima facie effect of the clean bill by showing, through its own employees having direct knowledge of the facts, that the crate was in the same condition when delivered as it was when received and exactly how this particular *322 crate was handled during the time it was under the responsibility of this carrier, thus allowing a trier of fact to reasonably deduce that it is more probable than not that the merchandise was in a damaged condition when the carrier received it.
It must be remembered that the clean bill of lading is given only prima facie, and not conclusive, effect. In Watkins v. Zeigler, 147 So.2d 435, 438 (La.App. 2d Cir. 1962), we recognized that prima facie evidence was only a fact ". . . presumed to be true unless disproved by some evidence to the contrary."
The question of damage to the crate (whether existing or not, to whatever degree) is relevant as to the type and the amount of evidence the carrier must introduce to overcome the prima facie effect of a clean bill. The evidentiary burden imposed on the carrier to overcome the presumption created by the clean bill that the crated goods were received in apparent good order, will vary proportionately with the degree, if any, of the damage to the crate or the package. Obviously, if the crate is shown to have extensive damage upon delivery, the effect of the clean bill becomes almost conclusive. See cases annotated, 33 A.L. R.2d 860. The annotation comments expressly note: "The form and limits of this presumption or prima facie case [of the clean bill] are, however, difficult to define with precision." id. at page 872.
We are not persuaded to the contrary by Aetna Insurance Company v. General Terminals Transfer and Storage, Inc., 225 So.2d 72 (La.App. 4th Cir. 1969). There, the court recognized the general rule of the prima facie effect of a clean bill, but rejected its application ". . . insofar as the rule. . . applies to the facts of this case." The defendant carrier there showed the goods had been transported by motor carrier in Italy before being shipped to the United States and that it had used due care in its handling of the goods which, when uncrated, were found to have been damaged.
Here, the defendant carrier introduced only the testimony of its driver from Monroe to Jonesboro. This employee first saw the crated refrigerator in question after it was loaded on his truck in Monroe. The driver testified only that it was transported from Monroe to Jonesboro without event. He did not and could not testify as to the crate's condition when received in Shreveport or when delivered in Monroe, or to events which may or may not have occurred between the two points. The defendant carrier's evidence was insufficient to overcome the prima facie effect of the clean bill.
We have considered R.S. 45:901, et seq. (the Bills of Lading Law, adopted from the Uniform Act) and C.C. Art. 2754 pertaining to the liability of carriers for damage to goods. Our application of the rule giving prima facie effect to a clean bill of lading, does not do violence to these laws in letter or in spirit. We believe the rule is in accord with the principle clearly expressed in C.C. Art. 2754 that carriers are liable for damage of the things intrusted to their care, unless they can prove that such damage has been occasioned by reason other than their own fault.
We find no error in the lower court's assessment of damages.
At appellant's cost, judgment is
AFFIRMED.
HALL, J., dissents and assigns written reasons.
HALL, Judge, dissenting.
This dissent takes issue with the majority opinion on both a key finding of fact and the controlling rule of law.
The opinion states that the carton containing the refrigerator was delivered by the carrier to the consignee with minor damage to the carton. This statement of fact is contrary to the trial court's finding of fact that there was "no apparent damage to the . . . cartons at the time of delivery to the plaintiffs." The record contains some scant evidence of damage to the carton, but the evidence is hardly sufficient to support a conclusion that the trial court was manifestly erroneous. I find that the *323 trial court was correct in its evaluation of the evidence and that there was no damage to the carton at the time it was delivered by the carrier to the consignee.
The majority opinion states a rule of law to the effect that a clean bill of lading establishes a prima facie case that the contents of crated items were delivered to the carrier in good condition, and that where the contents are delivered in a damaged condition, the carrier has the burden of proving it did not cause the damage. The rule as stated in the majority opinion is not supported by the jurisprudence of Louisiana, of other states or of federal courts.
A carrier is liable to the consignee of goods for damage to the goods caused by the carrier. In order to recover against a carrier, the consignee must prove the carrier caused the damage. The burden of proof is on the consignee. A well established rule has developed, often repeated by the courts of most states and the federal courts, that an owner must at least establish a prima facie case that the carrier caused the damage by proving: (1) receipt of the goods by the carrier in good condition; and (2) delivery of the goods by the carrier in damaged condition. The owner, of course, must also prove the amount of the damage in order to establish the amount of recovery.
In regard to proof of receipt by the carrier in good condition, another well established rule has developed: that a clean bill of lading is prima facie evidence that the goods were received in good condition, insofar as external, visible damage or damage discoverable upon reasonable inspection are concerned. Where goods are received by the carrier in containers, the clean bill of lading is prima facie evidence only of the fact that the container is in good condition and is not evidence as to the condition of the contents of the containers. This is consistent with the standard language on the bill of lading"received in apparent good order, except as noted (condition of contents of packages unknown.)"
An extension of this rule has developed where the clean bill of lading evidences receipt by the carrier of the container in good condition and the carton and contents are delivered in damaged condition, it may be inferred, prima facie, that the damage to the carton and contents was caused by the carrier while the goods were in transit.
The rules as stated above are consistent with the holdings in Frischhertz Electric Company v. Strickland Transportation Company, 262 La. 791, 264 So.2d 646 (1942); Rabon v. Red Ball Motor Freight, Inc., 292 So.2d 332 (La.App. 2d Cir. 1974); Aetna Insurance Company v. General Terminals Transfer and Storage, Inc., 225 So.2d 72 (La.App. 4th Cir. 1969); Caillier v. Texas and Pacific Railway Company, 303 So.2d 871 (La.App. 1st Cir. 1974), and Arwady v. Texas & N.O.R. Co., 18 So.2d 339 (La.App. 2d Cir. 1944). See Texas and Pacific Railway Company v. George, 466 S.W.2d 659 (Tex.Civ.App.1971) and Red Arrow Freight Lines, Inc. v. Howe, 480 S.W.2d 281 (Tex. Civ.App.1975). See also 13 Am.Jur.2d Carriers, §§ 285, 507, 593, 616 and 619; 13 C.J.S. Carriers §§ 121, 123, 127, 254 and 256.
All of the foregoing rules are based on logical inferences from established facts. All inferences created by the rules are subject to rebuttal by proving actual facts to the contrary.
The rule stated by the majority opinion is not a logical inference from established facts. The issuance of a clean bill of lading covering packaged goods, particularly in view of the disclaimer as to knowledge of the condition of the contents of the package, does not logically infer that the contents are in good condition. In the instant case, before the packaged refrigerator was delivered to the carrier which transported it from Shreveport to Jonesboro, the refrigerator was crated by the manufacturer in some other state, it was handled by the manufacturer and then by one or more carriers in shipment to a distributor in Shreveport, and it was handled by the distributor. There is no logical inference that the damage to the refrigerator was caused by the defendant carrier.
In the case before the court, the plaintiff failed to prove the crated refrigerator was in good condition when delivered to the *324 carrier in Shreveport. Also, plaintiff failed to make out a prima facie case against the carrier under the Frischhertz rule because, although plaintiff proved good condition of the carton when delivered to the carrier by virtue of the clean bill of lading, plaintiff did not prove the carton was damaged when received by plaintiff.
LSA-C.C. Art. 2754 does not place the burden of proof on the defendant carrier, absent a prima facie showing by the plaintiff that the damage occurred while the goods were in the care of the carrier.
I would reverse the judgment of the district court and reject plaintiff's demands.
NOTES
[*] Price and Hall, JJ., dissented from refusal to grant rehearing.