FORET, Judge.
Plaintiff, James Dischler, filed suit for damages against defendant, Red Ball Motor Freight, Inc., (hereinafter referred to as Red Ball) for allegedly damaged furniture shipped via Red Ball to him. From judgment in favor of plaintiff in the amount of $400.93, Red Ball appeals. Appellant alleges that the trial court erred in the following respects:
(1) In finding that plaintiff proved that the merchandise was received by Red Ball in good condition;
(2) In finding that plaintiff proved that the goods were received by him in damaged condition;
(3) In assessing damages against defendant.
The basis for liability of a common carrier for any loss, damage or injury to *765 property caused by the common carrier in an interstate shipment is the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C.A. Section 20(11). In order to maintain a successful action as against the carrier, the plaintiff, whether he be a shipper or consignee, must prove by a preponderance of the evidence (1) receipt by the carrier of the items in good condition; (2) arrival of the items in damaged condition to the plaintiff, and (3) the amount of the loss sustained thereby. Proof of all three is prerequisite to a judgment in favor of plaintiff. The absence of proof as to any one of the three leads to judgment in favor of the defendant carrier. Frischhertz Electric Co. v. Strickland Transp. Co., 262 La. 791, 264 So.2d 646 (1972); Home Furniture & App. v. Red Bail Motor Freight, Inc., 343 So.2d 319 (La.App. 2 Cir. 1977), writ refused 345 So.2d 1193 (La.); Caillier v. Texas & Pacific Railway Co., 303 So.2d 871 (La.App. 1 Cir. 1974), writ refused 307 So.2d 628.
In this case, plaintiff Dischler, in December, 1973, or January, 1974, purchased seven items of furniture (one sofa; one loveseat; two overstuffed chairs, and three living room tables comprising a set) from Star Furniture Company, Houston, Texas. On February 14, 1974, the purchased furniture was delivered in a truck of defendant, Red Ball, to the home of plaintiff, Dischler. The driver of defendant’s truck, Ray Pitre, unloaded the cardboard boxes in which the furniture was enclosed, on the driveway adjacent to plaintiff’s home. Plaintiff’s wife acknowledged receipt thereof. As to the condition of the boxes, Mrs. Dischler testified:
“The cardboard boxes looked like they had been handled quite a bit. Other than that, there was no mashed-in area, if that is what you mean. . . . The boxes were not damaged sufficiently that I would think that there was damage within.” (Tr., pg. 13)
Mrs. Dischler acknowledged receipt of the furniture by signing a delivery receipt handed to her by Pitre. (In the space immediately above her signature was a space provided for the notation of damages to the items delivered. That space was not marked.) Mrs. Dischler did not, at that time, inspect the furniture. However, Mrs. Dis-chler was concerned about the glass top insets of the tables being damaged, and she did open the crates and inspect the glass insets, and, finding them to be undamaged, she removed them from the packing crates and stored them separately. She testified that Pitre told her that she could inspect remaining merchandise at a later time and report any damages that were found. Pitre stated that he did not tell her so. However, he stated that it was not Red Ball’s or his policy to request that the person to whom items were delivered make an immediate inspection, and that, if asked if an immediate inspection were required, he would answer in the negative.
By plaintiff’s son and others, the cardboard boxes were removed to a cabana in the rear of plaintiff’s home. According to Mrs. Dischler, no boxes were dropped and/or damaged during the removal process. The boxes were placed side by side in the middle of the floor of the cabana, where they remained until April. In that month, plaintiff and his wife removed the furniture from the cardboard cartons. At that time, they discovered that the four legs of one table, and one leg of another table, were split lengthwise. Red Ball was thereafter notified. Defendant did not reimburse plaintiff for the damages, and this suit was accordingly instituted.
Plaintiff Dischler presented absolutely no evidence as to Red Ball’s receiving the furniture in good condition from Star Furniture. No testimony was elicited as to that element of plaintiff’s cause of action, and plaintiff’s exhibits were not pertinent thereto. P-1 provided the cost of the three tables; P-2 was a purchase contract between Star Furniture and plaintiff; P-3 was the claim form filled in by Mrs. Dis-chler; P — 4 was the freight bill of Red Ball; P-5 was the damaged merchandise inspection form, and P-6 was a letter from Red Ball to Dischler, in which it was stated that Red Ball would not pay plaintiff’s claim.
*766 In addition to total lack of proof of the goods being in good condition when received by Red Ball, we are also impressed by the fact that neither the packing cases enclosing the furniture, nor the glass insets, were damaged. It is inconceivable to us that a blow or blows sufficiently severe to split these 4" by 4" wooden table legs, would not also have severely damaged the packing crates and/or broken the glass top insets, which were also inside the crates.
Accordingly, the judgment of the trial court is reversed.
Plaintiffs suit is dismissed with prejudice, and all costs incurred in this matter are assessed against the plaintiff.
REVERSED.