JOSEPH A. SCHWALB, Plaintiff, *v.* ERIE RAILROAD COMPANY, Defendant.

Municipal Court of New York, Borough of Manhattan, First District, January 15, 1937.

*Bernstein, Weiss & Tomson* [*Michael C. Bernstein* of counsel], for the plaintiff.

*Davis, Polk, Wardwell, Gardiner & Reed* [*Matthew V. Stepsis* of counsel], for the defendant.

GENUNG, J. Action against a common carrier of goods for hire in interstate commerce for injury to two carloads of table grapes in transit. The complaint alleged delivery of the property in good condition to the initial carrier in Reedley, Cal., on August 11 and 20, 1934, and delivery by the defendant at New York city in a damaged condition. The answer was a general denial. The case was tried by a jury and a verdict resulted for the plaintiff awarding $250 damages for the injury to the property in both cases.

The defendant moves to set aside the verdict on the grounds: (1) That there was no evidence adduced as to the condition of the commodity at shipping point, and (2) that the plaintiff did not establish the extent of his damages.

The plaintiff offered in evidence on the trial the bills of lading issued by the Atchison, Topeka and Sante Fe Railway Company, the initial carrier, at the time the property was shipped from Reedley, Cal. Plaintiff offered no other evidence from shipping point. The agent of the initial carrier testified for the defendant that he did not inspect the contents of the cars, but sealed them and signed the bills of lading, which read in part:

### (Plaintiff's Exhibit 1.)

" Received...at Reedley, Calif., August 11, 1934, from L. R. Hamilton the property described below, in apparent good order, except as noted (contents and condition of contents of package unknown)...Consigned to Border Selling Service, Inc. Destinaticn New York City, State of N. Y. Route Santa Fe Erie Auction Del'y ...Car Initial SFRD. Car No. 26056....

| No. Packages | Description of Articles, special marks and exceptions. |
|---|---|
| 1008 | White table grapes (5 12/16″ display lug) lidded lugs Thomp. Seed." |

### (Plaintiff's Exhibit 2.)

" Received...at Reedley, Calif., August 20, 1934, from L. R. Hamilton the property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown)...Consigned to L. R. Hamilton. Destination Chicago, State of Ill. Route Santa Fe Car Initials SFRD Car No. 22734....

| No. Packages | Description of Articles, Special Marks, and Exceptions. |
|---|---|
| 130 | Table Grapes (5–12/16″ dis- |
| 140 | play lug) Lidded lugs Ribiers |
| 738 | "     "    Muscats |
| —— | "     "    Thompsons. |
| 1008 | |

These bills of lading were issued pursuant to the Federal act (Interstate Commerce Act) which requires that "Any common carrier, railroad, * * * or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State * * * to a point in another State, * * * shall issue a receipt or bill of lading therefor." (U. S. Code, tit. 49, § 20, subd. 11.)

A bill of lading serves three distinct functions, *first,* as a receipt for the goods, *second,* as a contract for their carriage, and *third,* as documentary evidence of title to the goods. As a receipt, it recites the place and date of shipment, describes the goods as to quantity, weight, dimensions, identification marks and condition, quality, and value. As a contract, it names the contracting parties which include the consignee, fixes the route, destination and freight rate or charges, and stipulates the rights of and obligations assumed by the parties. As documentary evidence, it is proof of ownership if a " straight " bill of lading, and title to the goods themselves if an " order " bill of lading. (*American Cotton Prod. Co., Inc.,* v. *N. Y. Central R. R. Co.,* 142 Misc. 821; *Meyer* v. *Peck,* 28 N. Y. 590; *Ellis* v. *Willard,* 9 id. 529.)

There is no question raised with respect to the receipt of the goods at the point of origin, the contract for their carriage, or the ownership or the right of plaintiff to bring this action. The real issue on this motion is whether or not these bills of lading function as a description of the goods as to condition when shipped so as to constitute *prima facie* evidence of good condition. One of the first functions of a bill of lading, as stated above, is to describe the quantity, condition and quality of the goods shipped. The bills of lading in this case expressly state that the initial carrier " Received at Reedley, Calif. * * * the property described below, in apparent good order, except as noted." There were no exceptions noted thereon.

The defendant urges that the parenthetical clause in the bill of lading, " contents and condition of contents of packages unknown," destroys the effect of the bills of lading as *prima facie* evidence of contents and condition of contents. There was no dispute with respect to the identity of the contents in this case.

The shipments consisted of 1,008 lidded lugs of grapes in each car. The grapes were packed into lidded lugs which, as described by the witnesses, consisted of boxes with solid ends and sides and raised or bulged tops so that the contents of the packages were visible by even a casual inspection. They were so constructed as to permit ventilation and inspection. These lugs were loaded into the cars lengthwise, six rows wide, twenty-one stacks long, and eight

layers high. The load was described by the witnesses as " a length-wise divided spaced load; double crosswise stripped all layers." The testimony agreed that the grapes in these shipments were packed in standard containers, that they were loaded in the car in the usual and customary way for shipping this commodity, that it was possible and customary to inspect loaded cars, and that on such an inspection the lugs and the contents of the lugs in any part of the car could be observed.

The clause relied on by the defendant applies only where the contents of packages are actually unknown and cannot be ascertained by the carrier from a reasonable examination of the shipment.

The Interstate Commerce Act expressly forbids " false billing, false classification, false weighing, false representation of the contents of the package or the substance of the property," and provides for penalties for the violation of the same. (U. S. Code, tit. 49, § 10.) The clause apparently was inserted, not so much to counteract the admissions made by the description contained in the bill, in the event of loss or damage, as to protect the carrier against accusations for any of the acts enumerated above where it could not observe the contents of the shipment, and against liability to innocent purchasers of bills of lading who may rely on the carrier's description in the bill of lading in purchasing the property.

The defendant is sued for damage to the property in transit and not for a misdescription of the lading. The damage complained of in this case consisted of physical damage to the containers and their contents caused by external forces as distinguished from inherent forces. The nature of the damage was easily discernible at destination, and the absence of such damage at the point of origin was as readily observable. The clause relied on by the defendant can counteract the *prima facie* effect of the statements as to contents and condition of contents in the bill of lading only where in fact the contents and condition thereof are actually concealed from the carrier and are not observable or the carrier is deprived of an opportunity to inspect the shipment. The bills of lading, therefore, were *prima facie* evidence of the good condition of the property when shipped. The parts of the bill of lading in question have been reviewed in other actions involving perishable goods and the views expressed here find support in the decisions in the cases of *Leonard* v. *Pennsylvania R. R. Co.* (N. Y. L. J. April 15, 1932, p. 2088, App. Term, 1st Dept.) and *Leonard* v. *Atchison, Topeka & Santa Fe R. R.* (N. Y. L. J. Dec. 19, 1936, p. 2288, App. Term, 1st Dept.). The cases of *Josephy* v. *Panhandle & Santa Fe R. R.* (235 N. Y. 306); *Miller* v. *Hannibal & St. Joseph R. R. Co.* (90 id. 430); *Orunsten* v.

*New York C. R. R. Co* (179 App. Div. 465); *Thyll* v. *New York & L. B. R. R. Co.* (84 N. Y. Supp. 175), and *The Dondo* (287 Fed. 239), cited by defendant, do not apply. They involved shipments where an external examination of the containers would not have revealed the contents or the condition of the contents of the packages shipped. The decision in *Orunsten* v. *New York C. R. R. Co.* (*supra*) was distinguished by the Appellate Term, First Department, in *Leonard* v. *Pennsylvania R. R. Co.* (*supra*), where a carload of watermelons was involved. The lugs and their contents were equally observable in this case.

*Lewis* v. *New York, Ontario & W. R. Co.* (210 N. Y. 429), also cited by the defendant, did not involve the question of carrier's liability, but passed upon the question of whether or not a common carrier can be held liable to an employee of the consignee for personal injuries sustained by him while unloading a car which had been improperly loaded by the shipper. The liability of the carrier, as such, for damage to merchandise was not involved, and the questions decided have no bearing on this class of case.

The defendant also argues that the proof was insufficient to establish the extent of the plaintiff's actual loss. The customary manner in which shipments such as those involved in this case are disposed of is by auction sale on the piers of the defendant in New York. The property is unloaded from the car by the defendant onto the defendant's pier and sale held there. The correct measure of damage is the difference between the market value of the shipment at destination in the condition in which it was shipped and its market value at destination in the condition in which it is tendered by the defendant to the plaintiff. This rule is based upon the theory that the plaintiff is entitled to be put in as good condition as he would have been in if the defendant had tendered the carloads uninjured. In applying the measure of damages, regard must be had to the use and purpose for which the shipment is intended. The plaintiff is entitled to recover the loss of what he would have had if the contract had been performed, that is, if the shipments had been conveyed safely. The actual loss which the plaintiff has sustained and which he is entitled to recover is the difference in value on the auction market of the shipments in the condition in which they were tendered by the defendant to the plaintiff and in the condition in which they were when shipped. (*Perkel* v. *Pennsylvania R. R. Co.*, 148 Misc. 284 [appeal dismissed by App. Term, 1st Dept., Sept. 7, 1933; N. Y. L. J. Sept. 8, 1933, p. 788], citing *King* v. *Sherwood*, 22 App. Div. 548; *Crinella* v. *Northwestern Pac. R. R. Co.*, 85 Cal. App. 440; 259 Pac. 774; *Chicago, M. & St. P. R. Co.* v. *McCaull-Dinsmore Co.*, 253 U. S. 97.)

The plaintiff in this case established the market value of the shipments at destination in the condition in which they were delivered and in the condition in which they should have been delivered. The damaged portions were disposed of in accordance with the usage and custom of the trade and the burden of going forward with proof to show that a disposition of the damaged portions of the shipments in a manner other than was adopted by the plaintiff would have mitigated the plaintiff's damages rested upon the defendant. Defendant failed to produce any evidence of any method of salvage by which plaintiff's loss could have been lessened. The plaintiff's proof was sufficient for the jury to fix the amount of damages.

The defendant cites *D'Olier* v. *New York C. & H. R. R. R. Co.* (50 Misc. 635) and *Zorillo* v. *Pennsylvania R. R. Co.* (Wayne Co., Mich., unreported).

The decision in the *D'Olier* case was based on the particular facts in the case in which the evidence showed that the plaintiff not only did not make a *bona fide* effort to dispose of the damaged goods in the usual and customary manner or to realize a real price therefor, but pursued a course which, on the face of it, aggravated the damages.

The *Zorillo* case was decided by the Circuit Court, Wayne county, Mich., which is not binding on this court. The decision in that case does not find support in the authorities.

The defendant also cites *Migliaccio* v. *Pennsylvania R. R. Co.* (Mun. Ct., Manhattan, 1st Dist., unreported). No final judgment has been entered as yet in that action, and the quotation is taken from the remarks of the official referee at the close of the trial. The decision is not based on any authority, and apparently is in conflict with the weight of authorities. The same question was raised in *Perkel* v. *Pennsylvania R. R. Co.* (*supra*) and contrary conclusion supported by authorities was reached.

The case of *Leonard* v. *Atchison, Topeka & Santa Fe R. R.* (*supra*), cited by the defendant, was a Municipal Court decision which was reversed by the Appellate Term and which has been referred to above. The reversal supports this decision.

The defendant also cites *Leonard* v. *Pennsylvania R. R. Co.* (15 Fed. Supp. 55). That case was decided by the United States District Court for the Southern District of New York, and the quotation was the court's remarks at the end of the trial. The remarks of the trial justice do not refer to authorities for the holding, and are in conflict with well-considered and controlling decisions. (See cases cited in *Perkel* v. *Pennsylvania R. R. Co.*, *supra*.)

The defendant's motion to set aside the verdict is denied.