292 So.2d 332 (1974)
W. J. RABON, d/b/a Star Furniture Company, Plaintiff-Appellee,
v.
RED BALL MOTOR FREIGHT, INC., Defendant-Appellant.
No. 12262.
Court of Appeal of Louisiana, Second Circuit.
March 19, 1974.
*333 Bodenheimer, Jones, Klotz & Simmons, by Harry D. Simmons, Shreveport, for defendant-appellant.
Stephen R. Burke, Minden, for plaintiff-appellee.
Before BOLIN, PRICE and HALL, JJ.
HALL, Judge.
The consignee, W. J. Rabon, doing business as Star Furniture Company, sued Red Ball Motor Freight, Inc., the carrier, to recover the sum of $338.36, for damages to two Hotpoint freezers delivered to Rabon by Red Ball. By amended petition Rabon made an alternative claim in the same amount against Hotpoint Division, General Electric Company, the manufacturer of the freezers. This alternative claim was dismissed as of nonsuit before the case was tried.
After trial, judgment was rendered in favor of Rabon against Red Ball. The district court found the freezers were delivered to Red Ball at Memphis, Tennessee; there was no intervening carrier handling the freezers until they were delivered to Rabon at his place of business in Minden, Louisiana; there was a clean freight bill showing no visible damage to the merchandise at the time it was delivered to Red Ball in Memphis; and the freezers were delivered to Rabon in a damaged condition. *334 The court held it was incumbent on Red Ball to show that the damage occurred other than while the freezers were in its possession, and that Red Ball failed to meet this burden of proof and was liable to Rabon for damages in the sum of $231.45.
Red Ball appealed, contending Rabon failed to prove the requisite facts upon which a judgment for concealed freight damage can be founded. Red Ball further contends Rabon's actual damages are less than the amount awarded by the trial court.
The Facts
Rabon ordered five freezers and a refrigerator from Hotpoint. On September 3, 1971, Red Ball picked up this merchandise at Hotpoint's warehouse in Memphis, Tennessee. Tommy L. Foster, employed by Hotpoint as a warehouseman, delivered the merchandise in question to Red Ball. Foster did not open the crates to inspect the freezers. He had no knowledge of where the freezers came from or who delivered them to Memphis. He stated he always inspects the crates that appliances are packed in and if these crates had been damaged, they would not have gone out of the warehouse. The warehouse release signed by an employee of Red Ball at the time the appliances were delivered to the carrier contained no notation that the crates in which these appliances were packed were damaged. The freight bill contains no notation that the crates in which the appliances were packed were damaged in any manner at the time Red Ball took possession of the freezers.
The appliances were delivered by Red Ball to Rabon's place of business in Minden, Louisiana, on September 8, 1971. Rabon signed a delivery receipt for the appliances in question without noting any damage. Above Rabon's signature the receipt contains a notation "RECEIVED FREIGHT DESCRIBED BELOW IN GOOD ORDER UNLESS NOTED ABOVE".
Rabon's employee, Ardis Thomas, was present when the shipment of appliances was delivered by Red Ball. Thomas uncrated the appliances and discovered the chest-type freezer and the upright freezer were damaged. The carton or crate containing the chest-type freezer had footmarks and black marks on the top of it and the freezer was mashed in on the top. When he uncrated the upright freezer he found it was also damaged on the top. Rabon was close by when the freezers were uncrated by Thomas and when Thomas called Rabon's attention to the damaged freezers, Rabon discovered that the chest-type freezer and the upright freezer were dented and mashed in on their tops. Rabon inspected the carton containing the chest-type freezer and found it had footmarks all over the top.
Burden of Proof
Red Ball contends Rabon has not met his burden of proof in showing the contents of the cartons containing the appliances were in good order and not damaged when delivered by Hotpoint to Red Ball in Memphis. As authority for this position, Red Ball cites Aetna Ins. Co. v. General Terminals Trans. & Stor., Inc., 225 So.2d 72 (La.App. 4th Cir. 1969). Rabon argues the burden of proof required has been met under a more recent ruling of the Supreme Court in Frischhertz Electric Co. v. Strickland Transp. Co., 262 La. 791, 264 So.2d 646 (1972).
Frischhertz is directly on point and is applicable to the facts in the present case. In Frischhertz, plaintiff ordered eight batteries and accompanying charging units from a New Orleans supplier. The manufacturer of these batteries, located in Brooklyn, New York, directed the defendant carrier by bill of lading to deliver the transformers and "4 cartons wet batteries, white label" to plaintiff's job site in Arabi, Louisiana. There was no notation of damage on the bill of lading. When defendant delivered the goods to plaintiff, two of the four cartons containing the batteries were visibly damaged due to leaking. It was *335 further found that the batteries were not in cartons which met the wet-battery packing regulations of the Interstate Commerce Commission.
The court held the carrier liable for the damage to the shipment citing the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C.A. § 20(11) which is the basis for liability of a common carrier for loss, damage or injury to property caused by the common carrier. The court stated:
"The law is well established that, in order to recover for carrier damage, the consignee must prove the following: (1) Receipt of goods by the initial carrier in good condition; (2) Arrival in damaged condition; and (3) The amount of the loss. Missouri P. R. Co. v. Elmore & Stahl, 377 U.S. 134, 84 S.Ct. 1142, 12 L. Ed.2d 194 (1964); Yuspeh v. Acme Fast Freight, 222 La. 747, 63 So.2d 743 (1953); Bancroft v. Yazoo & M. V. R. Co., supra [194 La. 115, 193 So. 481 (1939)].
"Although defendants in their brief deny that plaintiff has borne the burden of proof as to any of the elements of liability, we conclude that the only substantial question is whether plaintiff has established the receipt of the equipment by the carrier in good condition. As to this element, plaintiff offered the bill of lading.
"The bill of lading is a standard form. It bears the name of the shipper, Lightalarms, and lists Strickland as the carrier. It contains no notation of damages or exceptions made by the receiving carrier.
"We hold that the clean bill of lading is sufficient to establish prima facie that the carrier received the four cartons in good condition. By good condition, we mean that the cartons were free of defects or damage that would be disclosed by ordinary inspection.
"The applicable rule is correctly set forth in 14 Am.Jur.2d, Carriers § 619, p. 133 as follows:
`. . . [I]t is generally held that issuance of a bill of lading or shipping receipt without a notation thereon of visible damages or defects in the shipment creates a presumption that, insofar as is disclosed by ordinary inspection, the shipment was free from visible defects or damages and, to such extent, in good condition when received by the carrier. Moreover, the issuance by a carrier of a bill of lading or shipping receipt which, containing no notation of visible damages or defects, includes an affirmative acknowledgement that on receipt the goods to be shipped were in "good order" or "apparent good order," has been generally held to constitute prima facie evidence that the goods were received in good condition, at least with respect to external matters.'
"See also Annot., EvidenceCarrier of FreightDamage, 33 A.L.R.2d 867, 870 (1954).
"In the present case, the batteries arrived in three non-regulation cartons. Two had visible damage. Obviously, if these conditions had existed at the point of shipment, they probably would have been noted and exceptions made. Hence, the clean bill of lading is sufficient to prove prima facie that no such conditions existed when the carrier received the shipment and to place upon the carrier the burden of going forward with the evidence, if it is to exonerate itself. See Goldberg v. New York, N. H. & H. R. Co., 130 Me. 96, 153 A. 812 (1931); Minneapolis Fire & Marine Ins. Co. v. Baltimore & Ohio R. Co., 237 Minn. 111, 53 N.W.2d 828, 33 A.L.R.2d 860 (1952).
"In Minneapolis Fire & Marine Ins. Co. v. Baltimore & Ohio R. Co., the Minnesota Supreme Court stated:
`Damages to or defects in a shipment obvious at the point of destination would be equally apparent at the point of shipment if then existent. The issuance of a receipt for such a shipment *336 at the latter point without any notation of visible defects thereon would indicate the absence of such defects at that time. It would follow that if the shipment were visibly damaged upon arrival at the point of destination such damage must have been sustained in transit. Schwalb v. Erie R. Co., 161 Misc. 743, 293 N.Y.S. 842. This conclusion is strengthened by the fact that a carrier has the right to refuse to accept merchandise not properly packaged or crated, 9 Am.Jur., Carriers, § 299, and, under normal circumstances, would either refuse such a shipment or note on the receipt therefor any damages or defects plainly visible therein.'
"The carrier offered no evidence here tending to show that the batteries were damaged at the time of shipment. It did not negate plaintiff's prima facie case. Hence, the plaintiff is entitled to recover the damages sustained."
In Frischhertz, and in the case at bar, some, but not all of the cartons containing the damaged goods were visibly damaged when delivered to their final destination. The warehouse release containing no notation of damages to the cartons and the clean freight bill containing no notation of damages to the cartons is sufficient to prove prima facie that no such condition existed when Red Ball received the shipment. In addition to the warehouse release and the clean freight bill, Rabon offered the testimony of Foster, Hotpoint's warehouseman, showing that Foster physically delivered the freezers to Red Ball and had the cartons containing the freezers been damaged in any way, they would not have left the Hotpoint warehouse. This evidence gives extra force to plaintiff's prima facie case. Rabon has carried his burden of proof by establishing with sufficient evidence that the cartons containing the appliances were in good condition when they were delivered by Hotpoint to Red Ball, and with sufficient evidence, i. e., the visibly damaged carton containing the chest-type freezer, that the shipment of appliances arrived in a damaged condition.
It was the burden of Red Ball to go forward with evidence in order to exonerate itself. Red Ball offered no evidence to show the cartons were not in good condition when Red Ball received the shipment from Hotpoint. Hence, it logically follows that the shipment must have been damaged in transit by Red Ball making Red Ball liable for the damage sustained.
The ruling in Aetna, supra, is inapplicable to the present case because in Aetna there was no evidence that any of the containers were damaged in any manner when they arrived at their destination. This is made apparent by the following statement by the court in Aetna:
"In the instant case the containers were not damaged in any way and the damage could be discovered only by opening the containers and examining the contents. Therefore, it was incumbent upon the plaintiff to prove the good condition of the packaged contents upon receipt of the goods by both carriers."
The distinguishing factor in the instant case is the fact that the carton containing the chest-type freezer was visibly damaged upon arrival at Rabon's place of business.
Amount of Damages
Rabon proved he sustained loss due to damage of the freezers by Red Ball, however, the question remains as to whether the trial court was in error in awarding Rabon damages in the sum of $231.45.
At trial Rabon testified it would cost $124.65 to repair the chest-type freezer and that the upright freezer could be sold for about $75 at the time of trial. For damage to the chest-type freezer, the trial court awarded the amount Rabon testified it would cost to repair this freezer which was $124.65. The trial court further awarded $106.80 for damage to the upright freezer, such amount being the difference *337 between the purchase price plus tax and the resale value.
As a general rule, damages for injury to goods while in possession of a carrier are computed at the difference between the market value of the property in the condition in which it should have arrived at the place of destination and its market value in the damaged condition in which it actually did arrive. A party who has been damaged has a duty to mitigate his damages. Interiors, Inc. v. Ryder Truck Lines, Inc., 269 So.2d 496 (La.App. 2d Cir. 1972). See also National Motor Club of La., Inc. v. American Indem. Co., 170 So.2d 729 (La.App. 4th Cir. 1965).
At the time of trial, almost two years after the freezers were delivered, Rabon had possession of the freezers and had not attempted to sell or repair either one of them. In its assessment of damages, the trial court took into consideration the normal depreciation of an item over a two-year period. In this regard, the trial court was in error. Rabon failed to mitigate his damages within a reasonable time and cannot take advantage of any loss of value or higher cost of repair of the freezers due to depreciation and rising costs over a long period of time. The best evidence in the record by which we can determine the amount of damages at the time of delivery or within a reasonable time thereafter is the damage claim submitted to Red Ball by Rabon shortly after the damage was discovered. It lists $62.40 as the cost of repairing the chest-type freezer and $45 as the amount of loss on the upright freezer, making a total claim of $107.40. Rabon is entitled to recover this amount and not the amount awarded by the trial court.
The judgment of the district court in favor of W. J. Rabon against Red Ball Motor Freight, Inc., is amended by reducing the amount of damages from $231.45 to $107.40, and as amended is affirmed. The costs of this appeal are assessed to the defendant-appellant.
Amended, and as amended, affirmed.